## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BEAU JAMES MUSACCO,

        Plaintiff,

vs.                                  No. CIV 07-721 MV/LFG

RON TORRES, Director BMDC,
C.O. LARRY GRANT, C.O. KENNETH
FLOWERS, and C.O. SAVARILLO,

        Defendants.

### MAGISTRATE JUDGE'S ANALYSIS
### AND RECOMMENDED DISPOSITION[1]

### Introduction

    This is a *pro se, informa pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Beau James Musacco ("Musacco"). Musacco is currently incarcerated at the Bernalillo Metropolitan Detention Center ("BMDC") in Albuquerque, New Mexico.[2] His Civil Rights Complaint [Doc. 1], filed July 27, 2007, initially alleged that Defendant Torres denied him medical and dental care. In a first supplement [Doc. 3] to his Complaint, filed August 23, 2007, Musacco asserted that three corrections officers assaulted him out of the range of cameras. He also included

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2]According to Defendants' <u>Martinez</u> report [Doc. 31, Ex. G, Bates 0000007], on January 15, 2008, the Second Judicial District Court entered an Order to transfer Musacco from the BMDC to the Sandoval County Detention Center. In approximately May 2008, Musacco was transferred to the correctional facility in Los Lunas, N.M. [Doc. 35.] In mid-June 2008, Musacco notified the Court that he was returned to BMDC. [Doc. 39.]

in his supplement a claim that his mail was being delayed and mishandled.  [Doc. 3.]  On October

26, 2007, Musacco filed a second supplement [Doc. 10] to his complaint, alleging specific instances

when his legal mail was handled improperly.

On October 29, 2007, Defendant Torres filed an Answer [Doc. 13], denying Musacco's

claims and asserting various affirmative defenses.  On October 31, 2007, the Court issued an Order

accepting Musacco's first supplement as an amended pleading that added claims of assault and

interference with legal mail.  The Court further noted that the second supplement was merely a more

definite statement of Musacco's allegations regarding interference with his legal mail.  Musacco was

advised that he must provide the names of the officers who allegedly assaulted him, along with the

corrections employees he claimed had interfered with his legal mail.  [Doc. 14.]

On November 29, 2007, Musacco filed a pleading in which he identified the three

correctional officers who allegedly assaulted him– Defendants Larry Grant, Kenneth Flowers and

Savarillo.  Musacco stated that Defendant Flowers was no longer employed by Defendant and that

he did not have an address for him.  [Doc. 15.]

On December 21, 2007, Musacco filed a "Motion for Voluntary Dismissal Without

Prejudice" [Doc. 18] as to the claims of interference with mail service and inadequate medical care.

Musacco explained that his medical problem had been treated and that he was unable to identify the

exact employees or officers who allegedly interfered with his mail service.  On January 31, 2008,

the Court issued an Order of Partial Voluntary Dismissal, Without Prejudice with respect to those

two claims.  The Court noted that Musacco could pursue the mail interference claim at a later date

if he identified the proper parties.  [Doc. 22.]  Musacco's claims of assault and inadequate dental

treatment proceeded.  [Doc. 22, p. 3.]

2

On February 1, 2008, the Court entered an Order directing Defendant Torres to submit a Martinez report on the two remaining claims, concerning an alleged assault and inadequate dental care.  [Doc. 23.]  On February 19, 2008, Defendants Grant and Savarillo filed their Answer to the Complaint and first supplement, denying the allegations and asserting various affirmative defenses. [Doc. 27.]  On March 26, 2008, Defendants Grant and Savarillo[3] filed a motion for extension of time to submit their portion of the Martinez report.  In their request for extension, they stated that Defendant Torres' Martinez report would address the dental treatment claim, while Defendants Grant and Savarillo would address the assault claim in their separate Martinez report.  [Doc. 28.]

On April 1, 2008, Defendant Torres submitted his Martinez report.  [Doc. 30.]  On April 18, 2008, Defendants Grant and Savarillo filed their separate Martinez report.  [Doc. 31.]  On May 1, 2008, Musacco filed a response to Defendant Torres' Martinez report.  [Doc. 33.]  On May 23, 2008, Musacco filed a pleading he characterized as a "partial response" to the Martinez report filed by Grant and Savarillo.  [Doc. 35.]  In the "partial response," Musacco stated he was willing to dismiss, with prejudice, the assault claim provided Defendants "dropped" the aggravated assault charges they filed against Musacco in State District Court.  If Defendants were not willing to agree to this arrangement, Musacco requested an extension of time to file a response to the Martinez report submitted by Grant and Savarillo.  On May 29, 2008, the Court issued an Order granting an extension of time until June 12, 2008, for Musacco's response to the second Martinez report addressing the assault claim, but further indicated it had no authority to require Defendants to dismiss charges filed in state court against Musacco.  [Doc. 36.]  Rather than file a response to the Martinez report, Musacco filed a pleading on June 17, 2008, requesting an update on the Court's

_____

[3]Service was not effected on Defendant Flowers.

decision regarding the dental treatment claim.  [Doc. 39.]  The Court issued an Order clarifying that no recommendations had yet been issued on either of Musacco's two remaining claims and further noted that Musacco had not filed a response to the <u>Martinez</u> report addressing the assault claim. Thus, the matter was ready for resolution.  [Doc. 40.]

This matter now is before the Court on Defendants' <u>Martinez</u> reports and attachments.  In Musacco's initial complaint, he asked, in part, that he be provided full and adequate dental services, be seen within a reasonable period of time for dental problems, not be ignored, be referred promptly for follow-up care if the BMDC staff could not treat him, his wisdom teeth be extracted, and he receive any other necessary dental care.  [Doc. 1, p. 6.]  He also requested the sum of $25,000 for pain and suffering, although that request was made before he amended his complaint to add the claim of assault.

The Court's Order directing submission of the <u>Martinez</u> report [Doc. 23] explained that the report could be used for summary judgment purposes but that Musacco would be given an opportunity to respond to the report and to provide conflicting evidence, should any exist.  The parties were further advised that the <u>Martinez</u> report could be used in deciding whether to grant summary judgment on Musacco's claims and that all parties should submit whatever evidence might be relevant.  [Doc. 23.]

In the Order directing submission of the <u>Martinez</u> report, the Court directed Defendants to provide all documentation pertinent to Musacco's allegations as to the remaining claims. Defendants provided hundreds of pages of policies, photos and medical records in response to the Order.  In deciding this matter, the Court considered all of the pleadings, attachments and responses, including Musacco's Complaint (with attachments) and supplemental pleadings.

4

**Factual Background and Claims**

I.   **EIGHTH AMENDMENT DENTAL TREATMENT CLAIM**:

Musacco alleges that the BMDC dentist refused to extract his wisdom teeth and another "rotten tooth" that they "patched up with cotton."  According to Musacco, the dentist's reason for not pulling his teeth was because the dentist needed to request permission from the Director of the Correctional Facility before referring Musacco for dental treatment outside the facility.  Musacco contends that Defendants ignored his dental problem and related pain for over five months, and thereby violated his constitutional rights.  [Doc. 1.]

Defendant Torres argues that he is entitled to qualified immunity or that as director of the facility, he had no authority over Musacco's dental treatment and did not participate or acquiesce in his dental care.  In addition, Torres asserts that Musacco did not fully exhaust administrative remedies with respect to his dental treatment claim or that the dental treatment claim should be denied on its merits.

   A.   *Chronology -- Dental Treatment Claim*

The record is undisputed that on January 1, 2007, Musacco (apparently also known as Luis Miran or referred to as Luis Miran in some of the dental records) received medical intake screening at BMDC.  On January 1, 2007, the Medical History and Screen form for "Luis Miran" noted no medical problems that required immediate medical attention and no medical problems to which the facility should be alerted.  Miran/Musacco did not sign this form.  Instead, the signature line indicates "cuffed."  [Doc. 30, Ex. A.]

On January 15, 2007, there is a Medical Encounter Record for Beau Musacco stating that: "My tooth is broken and I wanted to see if I could get to the dentist?"  The objective notation by a

5

nurse indicates that a lower left-side filling was broken.[4]  [Doc. 30, Ex. B.] On February 2, 2007, a nurse signed a medical record and checked the box next to "dental referral" for complaints of decay.  [Doc. 30, Ex. C.]

On February 2, 2007, Dr. Broadbent, the facility's contract dentist, first examined Musacco in response to his dental complaint.  The dental record notes indicate moderate gingivitis and adequate occlusion.  Dr. Broadbent observed that teeth #31, #16 and #17[5] were to be extracted if they became symptomatic.  [Doc. 30, Ex. D.]  The February 2007 dental treatment notes indicate that Musacco wanted to save tooth #31 and that he was "advised [of the] need for root canal/crown after release from jail or ext (extraction) here."  [Doc. 30,  Ex. E.]  The notes further indicate Musacco declined pain medication on February 2, 2007.

Musacco claims that Dr. Broadbent refused to extract #17 on February 2, 2007.  Musacco also claims that Dr. Broadbent's charting of his teeth problems was incorrect and that Dr. Broadbent made notations about teeth that were not problematic and omitted marking the teeth that were causing problems.

Between February 2, 2007 and April 6, 2007, there are no written notations in the dental records indicating complaints by Musacco.  [Doc. 30, Ex. E.]  Musacco asserts that he made a number of complaints to the sick call nurses but that nothing was documented.

It is uncontested that Dr. Broadbent again examined Musacco on April 6, 2007.  If Musacco made no complaints after February 2, 2007, it is unclear what prompted this dental examination.

---

[4]Defendant Torres states that the nurse indicated in her notes that Musacco had a broken jaw.  Musacco disagrees.  The record indicates that Musacco complained of a "broken tooth" and that the nurse observed a broken filling.  [Doc. 30,  2 and Ex. B.]

[5]Teeth Nos. 16 and 17 are wisdom teeth.  http://www.ada.org/public/topics/permanent_number.asp

6

The April 6 notes state that Musacco had pain on the left lower side and that there was an erupting infected[6] wisdom tooth.  He also had a cavity on the upper left side.  Musacco specifically pointed to tooth #14.  The dentist advised Musacco of decay on tooth # 16 and that  Musacco needed to see an oral surgeon for the extraction of (wisdom) teeth #16 and #17. Musacco was given Tramadol,[7] medication for pain, and a pain-relieving gel.  [Doc. 30, Exs. E, F.]  On a "standard referral form," submitted by Dr. Broadbent, dated April 6, 2007, Musacco was permitted to have medicine gel for a toothache.  [Doc. 30, Ex. F, p. 2.]

Musacco asserts that Dr. Broadbent told him on April 6, 2007, that he would refer Musacco to UNMH for extraction of the infected tooth.  Dr. Broadbent's April 6 notes state only "advised need to see oral surgeon for ext. #16, 17."  [Doc. 30, Ex. E.]  There is no additional notation made on this date regarding the wisdom teeth, no indication of a referral to the oral surgeon, and no documentary evidence that Dr. Broadbent requested approval, at this time, for outside dental treatment to extract Musacco's wisdom teeth.  [Doc. 30, Ex. E.]

Three days later, on April 9, 2007, Musacco was seen by a nurse for a toothache.  The nurse's objective notes indicate a lower left wisdom tooth that was growing in.  Musacco complained of "severe pain."  The "plan" states referral to "dental."  [Doc. 30, Ex. G.]

On April 20, 2007, the record indicates that Musacco was a "no show" for his scheduled appointment, concerning Musacco's complaint from April 9. [Doc. 30, Ex. E.] Musacco asserts that

---

[6]Defendant interprets the dentist's writing to state an "erupting impacted wisdom tooth."  Musacco states that the notes say an "erupting infected wisdom tooth."  It is more likely that the word is "infected" since impacted teeth generally do not erupt.  *See* http://en.wikipedia.org/wiki/Wisdom_teeth (discussing impacted and encased wisdom teeth and erupting teeth).

[7]Tramadol relieves moderate pain. It is similar to narcotic pain medications. It works on certain nerves in the brain that control how you experience pain.  www.webmd.com

the only reasons he would not have shown up for a dental appointment were if correctional officers did not escort him to the appointment or he was not made aware of the appointment.

On May 28, 2007, the nurse again saw Musacco, who reported that his tooth was causing "so much pain."  Under the "objective" section of the form, the nurse reported that Musacco complained his lower left wisdom tooth had been painful for a week.  The plan again was a referral to "dental." [Doc. 30, Ex. H.]  Musacco argues that the pain had been going on for 3½ months rather than one week.  The dental records indicate he had problems with the tooth beginning in early April; thus, after Dr. Broadbent noted the need for extractions on April 6th, Musacco could have been experiencing tooth pain for closer to seven weeks.

Between May 28, 2007 and July 14, 2007, Musacco contends that he made more complaints to sick call nurses about his tooth (#17), but that none were documented.

On July 14, 2007, Musacco was seen by the nurse.  He complained of pain from a "bad tooth."  He was to be referred to "dental."  [Doc. 30, Ex. I.]  On July 27, 2007, Musacco complained to the nurse that he had had a toothache for five months.  The LPN checked his wisdom teeth but observed no swelling to the gums.  He was again referred to "dental."  [Doc. 30, Ex. J.]  Musacco asserts that this is the sixth documented time he made complaints about his painful tooth.

Although there were numerous notations on the records by nurses that Musacco was to be referred to "dental," he was not seen by Dr. Broadbent until August 14, 2007.  [Doc. 30, Exs. E, K.] This is approximately four months after the April visit when Dr. Broadbent's notes indicate the wisdom tooth or teeth should be extracted.  The August 14, 2007 dental notes indicate that Dr. Broadbent examined Musacco and advised him that tooth #16 needed to be extracted.  "Pt wants ext."  Dr. Broadbent extracted the tooth without complications on that date, and Musacco was

8

prescribed Naproxyn, a pain medication, for seven days.  [Doc. 30, Exs. E, K, L.]  Even though Dr. Broadbent's earlier notes indicated teeth #16 and 17 needed to be extracted by an oral surgeon, Dr. Broadbent performed the procedure with respect to tooth #16.

Musacco argues that nothing in the record indicates Musacco refused to have tooth #17 extracted on this date.  Musacco further contends that Dr. Broadbent informed him that he would refer Musacco to the prison director for permission to have #17 extracted at UNMH, which Musacco states is the second time Dr. Broadbent told him this.  Musacco purportedly asked Dr. Broadbent "what happened to the first request you sent to the director?"According to Musacco, Dr. Broadbent responded that the dentist's first request had gone unanswered.  The dental notes do not confirm that a first request was made, although they indicate that Dr. Broadbent believed a referral to an oral surgeon was necessary as early as April 2007.

On October 5, 2007, Musacco reported to the nurse that he suffered from pain to the lower left molar.  The record indicates Musacco stated "They were supposed to send me to UNM to get my molar extracted."  The nurse observed no cavities and noted that Musacco was requesting a renewal of Ultram for pain in his lower back.  The plan was to refer him to dental and check on an appointment at UNM for dental treatment.  At the bottom of this record, the nurse wrote "unable to locate chart to check on appoint. UNM."  [Doc. 30, Ex. N.]

On October 24, 2007, the dental treatment notes indicates the dentist saw Musacco for pain to the lower left molar.  The records further states "has wisdom tooth coming in #17.  Refer for extraction."  The note is signed by Dr. Broadbent.  [Doc. 30, Ex. E.]

Musacco's wisdom tooth (#17) was not extracted.  Almost two months later, on December 21, 2007, Dr. Broadbent examined Musacco again.  Musacco complained of pain on the lower left

side.  There was puffiness or swelling over tooth #17 but no drainage. The record notes:  "Off-site referral."  He was prescribed Naproxyn.  [Doc. 30, Ex. E.]

Musacco argues that it took five visits to Dr. Broadbent's office and eight months of complaints about his teeth before an off-site referral was finally made for extraction of the second wisdom tooth.

The next dental record is a letter dated January 8, 2008 to Henry Perea from Dr. Broadbent. The letter states that Musacco must have dental surgery for an impacted[8] wisdom tooth due to chronic inflammation and pain.  "Please advise me how to get approval for making the off-site appointment with the oral surgeon."  [Doc. 30, Ex. O.]  This is the first such letter provided by Defendant in reference to obtaining approval to make the recommendation for off-site dental treatment.

A memorandum, dated January 9, 2008, to Chief Ronald Torres from Deputy Chief Henry Perea, states that Musacco is in need of dental services that require surgical extraction of some or all of his wisdom teeth and that such service is "not contracted by the CMS contract."  "CMS would like to know if MDC is willing to cover the costs for the oral surgery expense."  [Doc. 30, Ex. P.] This memo, dated January 10, 2008, further indicates Mr. Torres' recommendation that MDC pay for the service.  [Doc. 30, Ex. P.]

On January 16, 2008, the request was transmitted from Dr. Broadbent to Dr. Mitchell in Albuquerque, NM.  [Doc. 30, Ex. Q.]  The form indicates complaints of pain, slight bleeding on the lower left wisdom tooth.  Number 17 wisdom tooth was partially impacted and tipped distally.  Dr. Broadbent recommended that Dr. Mitchell evaluate and treat and extract impacted wisdom tooth

---

[8]Since there are records noting that the tooth was "coming in," it probably was not entirely "impacted."

#17.  An appointment with Dr. Mitchell was noted for January 28, 2008.  [Doc. 30, Ex. Q.]

On January 28, 2008, Dr. Mitchell extracted wisdom tooth #17 and prescribed Lortab for pain and an antibiotic.  [Doc. 30, Ex. Q.]  Thus, the second wisdom tooth was extracted approximately eleven months after Musacco first saw Dr. Broadbent and nine months after Dr. Broadbent's notes indicated Musacco needed to see an oral surgeon to have the wisdom teeth extracted.

Defendant supplied multiple pages of records indicating Musacco was prescribed pain medications during this time period.  [Doc. 30, Ex. R.]

On March 20, 2008, Dr. Broadbent signed an affidavit in which he stated that he is a staff dentist at MDC and an independent contractor for CMS.  According to Dr. Broadbent, Musacco's "dental records at no time reflect an emergent dental condition" and that in his professional opinion, the dental care provided to Musacco "was appropriate, timely and consistent with the standard of care in a correctional facility."[9]  [Doc. 30, Ex. S.]

Attached to Torres' Martinez report is MDC's policy concerning dental treatment for inmates.  [Doc. 30, Attachment 2.]  Essentially, the policy states that dental health matters involving clinical judgments are the sole province of the responsible dentist and arrangements are made with health care specialists in advance of need.  The facility dentist determines the extent of dental care needed for an inmate.  If dental care is required which cannot be provided in the facility, the dentist forwards a request for referral to a private dentist through CMS.  The list of dental procedures that are provided by the contract dentist are: temporary fillings, extraction of non-impacted teeth and

---

[9]The question raised in this § 1983 action, however, is not whether Dr. Broadbent's treatment was negligent but rather, whether there was an Eighth Amendment violation.  Thus, the claim must be analyzed under that standard rather than whether the treatment met the appropriate standard of care.

extraction of wisdom teeth.  Dental services that are not provided by the contract dentist, include

root canals, prosthetics.  Extraction of impacted wisdom teeth is not listed.  [Doc. 30, Bates #BM-

76.]

### B. *Grievances*

Mr. Torres attached a few grievance-related forms to the Martinez report.  On July 11, 2007,

there is an inmate grievance resolution form from Musacco concerning medical care to his groin

area.  Musacco did not complain of inadequate dental care on this form, although the response from

the facility briefly addresses dental treatment.  [Doc. 30, Ex. T.]

Torres attached two other documents concerning grievances.  They are computerized entries

summarizing grievances rather than the original grievance forms themselves.  They are difficult to

understand, to some degree.  However, both are entitled grievances and refer to filings by Mr.

Musacco.  One is dated July 16, 2007.  It is typewritten and states: "I have seen sick call numerous

times complainin [sic] of bad tooth aches.  I have been to the dentist for them to be pulled.  They tell

me they have to refer me to the director to send me to UNM to have them pulled.  I also sent a letter

to the director Ronald Tor [sic].  The response, dated July 17, 2007, states "seen by dentist 8/14/07

it can take up to 3 weeks to see dentist as when you try to see dentist on the outs. Kvalerio."  [Doc.

30, Ex. T, Bates BM-79.][10]

The other grievance, also a computerized summary, is dated August 8 or 9, 2007.  That form

contains a typewritten entry stating "Dental I have filed [sic] out a grievance I have filed a tort claim

---

[10]Although the Order directing the Martinez report directed Mr. Torres to provide information concerning
any and all grievance filed by Musacco, based on the attachments to Musacco's response, Mr. Torres did not supply
the complete information.  For example, copies of the original grievances were not supplied by Mr. Torres, and Mr.
Torres provided no information concerning the letter allegedly sent to him or the grievance dated October 5, 2007
and the institution's response.

I still can't get any of my teeth pulled.  They are both in pain.  Thank you."  It appears that someone from the facility responded on August 17, 2007, stating that Musacco was seen on August 14, 2007 and that "it can take up to 3 weeks to see dentist as when you try to see dentist on the outs."  [Doc. 30, Ex. T, Bates BM-78.]  In other words, the responses to both grievances were identical, according to the computer-generated summaries.  Defendant Torres did not attach the original handwritten grievance to his report nor explain that it was unavailable.

Musacco provided a copy of his original handwritten grievance, dated July 11, 2007, in which he stated he had seen sick call numerous times complaining of bad tooth aches.  "I have been to the dentist for them to be pulled.  They tell me they have to refer me to the director to send me to UNM to have them pulled.  I also sent a letter to the director Ronald Torres on this matter."  [Doc. 1, attachment.]  The grievance form shows it was received by a supervisor on July 11, 2007, but there is no response provided on the bottom of that form in the allotted space. He attached another copy of the grievance to his response to the Martinez report.  While identical for the most part, there are additional notations at the bottom of the grievance form noting that it was referred to medical and received on July 16, 2007, and then received by someone on October 26, 2007.  There is no response on the form supplied by Musacco.  Moreover, this grievance form contains blank spaces next to the questions: "problem resolved" (yes or no), "grievance withdrawn" (yes or no) and "inmate's signature."  [Doc. 33, attachments.]

Musacco provided a copy of another grievance, dated August 8, 2007.  This grievance states: "(Dental) I have filed [sic] out a grievance.  I have filed a torts claim.  I still can't get any of my teeth pulled.  They are both in pain.  Thank you."  [Doc. 33, attachment.]  This grievance form shows it was received by a supervisor on 8/8/07, and referred to "MED" on August 10, 2007.  The

written response on the form states Musacco was "seen by dentist 8/14/07. It can take up to 3 weeks to see dentist as when you try to see dentist on the outs." It appears the response was signed on September 10, 2007. Nothing is noted in the area that states "I do wish to appeal." Again, the original form submitted by Musacco does not indicate whether he believed the problem was resolved and whether he withdrew the grievance. That portion of the grievance form is not filled out. [Doc. 33, attachment.]

Musacco attached another grievance, dated October 5, 2007. In that grievance form he stated: I have submitted two (2) grievances, have filed a Federal Torts Claim. Still can't get one of my wisdom teeth extracted. They have pulled one and are still supposed to pull the lower left one. They stated they had to refer me to UNM. My first complaint about the tooth to sick was back in February. This is absolutely ridiculous. Thank you." [Doc. 33, attachment.] The grievance was received although there is neither a date nor signature that is legible.

The response, dated 10/18/07, states: "You had a tooth pulled on 8/14/07. Wisdom teeth are only done if they are not impacted. Dr. Broadbent determines the necessity of off site dental. This is not routine. You must have significant dental complications." The signatures are dated October 18, 2007. There is nothing filled in on the space for "I do wish to appeal." The form also contains blanks for "problem resolved" and "grievance withdrawn." [Doc. 33, attachment.]

In addition, Musacco attached a copy of the letter to Ron Torres, dated July 9, 2007. In that letter he provides a history of treatment he had received for his dental complaints. He stated he had gone to the dentist several times but that they were going to have to refer him to the director to go to UNM to have them pulled. Musacco raises other complaints and asserts that if he does not receive proper dental attention after this letter, he would be forced to pursue legal action. [Doc. 1,

attachment.]  There are no documents attached by either party indicating a response by Mr. Torres to the letter, or confirming that Torres did or did not receive the letter.

Musacco attached several emails (to his response to the <u>Martinez</u> report), written on his behalf.  One of the emails, dated October 23, 2007, appears to have been written to a lawyer with a law firm, regarding possibly a class action.  In the email, counsel asked about a response from "MDC" regarding the concerns of Musacco about his left wisdom tooth.  [Doc. 33, attachments.]

The second email, dated November 20, 2007, was sent by an attorney to Mr. Sisneros with the Bernalillo County government and it concerned "subclass member with medical issue."  The substance of the email was that Musacco reported he had filed numerous grievances in 2007 concerning his back left wisdom tooth and was promised a referral to UNMH but had not yet received it and was still in pain.  The attorney asked that Musacco receive proper care for his tooth, including a referral as necessary.  [Doc. 33, attachment.]  There is no evidence that Defendant responded, or that Musacco received a copy of a response to these emails.

### C.     *Analysis:*

In his Civil Rights Complaint, Musacco alleges that his constitutional rights to professional dental care were violated and that he is suffering both physically and psychologically as a result of being denied care.  [Doc. 1.]  He also claims that Mr. Torres oversees all operations of BMDC and that Musacco personally wrote Mr. Torres concerning the dental problems he had.  The letter to Mr. Torres was attached to a number of Musacco's pleadings.

In view of the liberal construction customarily given *pro se* complaints, the Court construes Musacco's allegations concerning his dental treatment as asserting an Eighth Amendment claim against Defendants for deliberate indifference in refusing to timely refer Musacco to a dentist who

could extract his wisdom teeth, or in delaying dental treatment after numerous and frequent complaints by Musacco.

Torres contends in his Martinez report [Doc. 30] that he is entitled to summary judgment on the basis of qualified immunity or, alternatively, for lack of personal involvement.  He further alleges Plaintiff's failure to exhaust prison grievance procedures warrants summary judgment in his favor.

The Eighth amendment provides inmates with the right to be free from cruel and unusual punishment.  The right is violated if prison officials show "deliberate indifference to an inmate's serious medical needs."  Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).  In  Estelle v. Gamble, the United States Supreme Court held that, under certain conditions, the denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment.  Estelle, 429 U.S. 97, 103-05 (1976), *reh'g denied*, 429 U.S. 1066 (1977).  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  Id., 429 U.S. at 106.

A prison official does not violate the standard unless "the official knows of and disregards an excessive risk to inmate health or safety."  Self v. Crum, 439 F.3d 1227, 1231 (10th Cir.) (*quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994)), *cert. denied*, 127 S.Ct. 131 (2006).  "[T]he officer must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  Thus, a plaintiff must prove two elements: (1) objectively, that his medical needs were "sufficiently serious," and (2) subjectively, that the prison official acted with a "sufficiently culpable state of mind."  Self, 439 F.3d at 1230-31.

16

An inmate must rely on prison authorities to treat his medical or dental needs.  Moreover, the Tenth Circuit has concluded that "dental care is one of the most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981). A number of other courts have held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need.  *See* Fields v. Gander, 734 F.2d 1313, 1314-15 (8th Cir.1984); *see also* Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir.1996) (recession or bleeding of the gums); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir.1995) (deterioration of teeth due to lack of treatment); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989) (an interference with the ability to eat).  In Penrod v. Zavaras, the Tenth Circuit held that, for summary judgment purposes, the deprivation of toothpaste resulting in bleeding gums and tooth decay which had to be attended to by a dentist could constitute serious harm under the Eighth Amendment. Penrod, 94 F.3d at 1406.

## 1.   Qualified Immunity

In evaluating a claim for qualified immunity, the Court first determines whether, considered in the light most favorable to the plaintiff, the facts alleged state a violation of a constitutional right. If so, the Court determines whether the constitutional right was clearly established at the time of the injury.  If the answer to either question is "no," the defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir.2001).

Taken in the light most favorable to Plaintiff, the facts alleged by Musacco state a violation of an Eighth Amendment right to be free of cruel and unusual punishment.  Musacco asserted that he suffered continued pain over at period of at least nine months until his second wisdom tooth was

17

pulled.  He further alleged, and the record supports, that the prison's contract dentist made the decision or recommendation to have both wisdom teeth pulled as early as April 2007. and yet waited until August 2007 to extract the first wisdom tooth.  Notwithstanding Musacco's repeated requests for dental care as to the painful wisdom teeth, the contract dentist did not obtain approval from Defendant Torres to extract the second wisdom tooth until late January 2008.

Musacco's allegations, at a minimum, raise a genuine issue of material fact, as to whether he suffered a serious health deprivation due to the dentist's or facility's deliberate indifference to his dental needs.[11]  Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference may be manifested by "an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, or 'persistent conduct in the face of resultant pain and risk of permanent injury.'"  Hill v. Lamanna, 2006 WL 2433773 at *13 (W.D. Pa. Aug. 18, 2006) (internal citations omitted).

The Court further concludes that deliberate indifference to a prisoner's serious medical condition is a violation of a constitutional right and that the law was clearly established at the time of the alleged injury  See Mata, 427 F.3d at 749.

## 2. **Supervisory Liability and Personal Participation**

Mr. Torres argues, without much elaboration, that if sued in his individual capacity, he is entitled to summary judgment on the basis of qualified immunity because he appropriately relied

---

[11]See Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (observing that the defendants continued to labor under the fatal misconception that the Eighth Amendment duty to provide medical care was limited to life-threatening conditions or those that caused permanent disability; also holding that the duty applied to medical conditions that could result in pain and suffering that serve no legitimate penological purpose, e.g., a missing filling to a tooth), aff'd, 97 F.3d 1458 (9th Cir. 1996).

upon the contract dentist to provide appropriate dental care to Musacco.  If sued in his official capacity, Mr. Torres, as Director of the BMDC, states he had no authority over Musacco's dental treatment and did not participate or acquiesce in any way to Musacco's dental treatment.  In essence, Mr. Torres' second argument is that a director or supervisor cannot be held liable for his employee's or subordinate's acts, without a showing of personal participation by Mr. Torres in the alleged constitutional deprivation.

Musacco does not identify whether he sued Mr. Torres in his individual or official capacity.  The Court assumes, in providing a liberal interpretation to the *pro se* complaint, that Musacco intended to sue Mr. Torres in both his personal capacity and official capacity, as director of the facility.  *See, e.g.,* Murphy v. I.R.S., 2001 WL 1488603, at *2 (D. Colo. Aug. 7, 2001) (construing pro se complaint as asserting claims against defendants in their official and individual capacities despite the fact that all references to defendants related to actions they took in their official capacities).

[P]ersonal participation is an essential allegation in a § 1983 claim.  Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (quotation omitted).  "[T]here is no concept of strict supervisor liability under § 1983."  Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).  "[S]upervisory liability will not arise upon the 'mere right to control employees.'"  Eaton v. Whetsel, 2008 WL 2175358 at *2 (10th Cir. May 27, 2008) (internal citation omitted).  While a supervisor might be held liable for injuries caused by the conduct of one of his subordinates, a party must allege and show fault on the part of the supervisor.  Scull v. New Mexico, 236 F.3d 588, 600 (10th Cir. 2000).

In order to establish such a claim against a supervisor, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, the plaintiff must show an "affirmative

link" between the supervisor and the violation, "namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." Serna v. Colo. Dep't of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citing Holland v. Harrington, 268 F.3d 1179, 1187 (10th Cir. 2001)). "[A] plaintiff must demonstrate that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." Id. (internal citations omitted).

Here, Mr. Torres argues that he did not participate or acquiesce in the dental care provided to Musacco. However, Mr. Torres' argument is not admissible evidence. He supplied no affidavit testimony. In contrast, Musacco provided copies of a letter he addressed and purportedly sent to Mr. Torres in July 2007, that concerned Musacco's complaints about dental care. Mr. Torres did not deny receipt of this letter through affidavit testimony or otherwise, nor did Mr. Torres state whether he received more than one referral from the contract dentist for outside dental treatment for Musacco.       In addition, it is undisputed that Torres participated, to some extent, in the dental care provided to Musacco. In January 2008, Mr. Torres approved the written request for Musacco's outside dental treatment. [Doc. 30, Ex. P.] Thus, at a minimum, there is a genuine issue of material fact with respect to whether Mr. Torres participated or acquiesced in the dental care provided to Mr. Musacco.

While Mr. Torres supplied the contract dentist's affidavit, the affidavit is of little assistance and is noticeably brief. For example, the dentist does not indicate how many times he saw Musacco or why there were long gaps between treatment, notwithstanding the many notations by nurses that Musacco was being referred to "dental" for complaints of pain. There is no explanation by the dentist why he waited until August 2007 to extract a wisdom that he recommended be extracted by an oral surgeon in April 2007. The dentist also did not explain why he was able to extract one of

the wisdom teeth but not the other.  In addition, the dentist did not state how many times he requested  a referral for Musacco's dental treatment outside the facility, even though his notes indicate he believed an oral surgeon should extract the wisdom teeth as early as April 2007.  Indeed, according to the records supplied by Mr. Torres, the dentist did not ask for approval for outside treatment for Musacco until January 2008.  There is no explanation provided by Defendant why it took close to nine months before Musacco's second wisdom tooth was extracted.

The Court determines that Defendant Torres is not entitled to qualified immunity because, taken in the light most favorable to the plaintiff, Musacco stated a violation of a constitutional right and the constitutional right was clearly established at the time of the alleged injury.  Moreover, genuine issues of fact exist regarding whether Defendant Torres personally participated in the dental care provided to Musacco and whether he acted in a manner that a  reasonable official would believe was consistent with Musacco's clearly established rights.  Thus, for all of these reasons, the Court recommends that Defendant Torres' request for summary judgment, based on qualified immunity, be denied.

### 3.   **Exhaustion**

Defendant Torres also argues summarily that Musacco had available to him the grievance process at BMDC but that he did not follow the process through to its conclusion.  Thus, according to Torres, the lawsuit is barred in whole as to the dental care claim under the Prison Litigation Reform Act (PLRA).  [Doc. 30, ¶ 8.]

There is no question that the PLRA mandates exhaustion of pertinent prison grievance procedures, and that unexhausted claims cannot be brought in court.  Jones v. Bock, __ U.S. __, 127 S.Ct. 910, 918-19 (2007).  In 2007, the Supreme Court clarified that exhaustion is an affirmative

defense and that, therefore, inmates are not required to demonstrate exhaustion in their complaints. Id., at 921.  Defendants have the burden of asserting the failure to exhaust and of proving failure to exhaust as an affirmative defense.  Mitchell v. Estrada, 225 F. App'x 737, 741 (10th Cir. Feb. 15, 2007) (*citing* Jones, 127 S.Ct. 910).

The Court finds the existence of genuine issues of material fact with respect to exhaustion. First, Defendant did not provide copies of any of the three original grievance forms that are in the possession of Musacco and that indicate receipt by BMDC.  Two of the grievances (as documented by Defendant's database entries) contain identical responses by the BMDC, but it is unclear whether BMDC provided timely responses to Musacco.  According to Musacco, Defendant responded to two of the three grievances months outside of the required time limit.  One grievance was returned to him three and one-half months after he filed it, but without a response.  [Doc. 33, p. 9.]  Defendant offers no affidavit testimony to the contrary, nor did Defendant produce the facility's regulations concerning the grievance process and requirements (notwithstanding the Court's direction to do so in its Order requiring Martinez report).

Defendant primarily supplied copies of computerized entries summarizing some of Musacco's grievances.  At times, they are incomplete or cut-off in mid-sentence.  They do not indicate that Musacco ever declined to pursue a denial of his grievances or to pursue an appeal. They also do not show if the grievances were responded to in a timely manner.

Because the Court finds genuine issues of fact exist as to whether Musacco exhausted the grievances procedures available to him at BMDC, the Court recommends denying Mr. Torres' request for summary judgment as to exhaustion.[12]

### 4.   Merits of Dental Treatment Claim

Based on the evidence before it, as discussed *supra*, the Court concludes that genuine issues of material fact exist concerning the seriousness of Musacco's medical/dental condition and whether Defendant's acts or omissions were sufficiently harmful to evidence deliberate indifference to Musacco's serious medical needs. A genuine issue of facts exists as to whether the delay in extracting Musacco's impacted or partially impacted wisdom teeth for possibly as many as nine months, in the face of his pain, was deliberately indifferent.

Thus, the Court recommends denying summary judgment in favor of Defendant Torres. The Court further recommends that Musacco's Eighth Amendment claim concerning inadequate dental treatment proceed through discovery and to trial before the Court.[13]

## II.   EIGHTH AMENDMENT EXCESSIVE FORCE/ASSAULT CLAIM

Mr. Musacco's assault claim meets a different fate. Based on the pleadings and Martinez report submitted by Defendants Grant and Savarillo, the Court concludes that no genuine issue of material fact exists with respect to Defendants' claim to qualified immunity. Thus, the Court

---

[12]In the Martinez report submitted by Defendants Grant and Savarillo, regarding the assault claim, Defendants do not argue failure to exhaust administrative remedies. This is so even though it does not appear from the attachments that Musacco appealed the denials of those grievances. Thus, it simply is not clear what kind of administrative process is required at BMDC before an inmate is considered to have exhausted his administrative remedies. [Doc. 31, p. 13, Ex. G.]

[13]The parties did not request a jury trial and the time for doing so has elapsed; thus, a bench trial will be conducted before the Court.

recommends that summary judgment be granted in favor of the three correctional officer defendants ("COs") on the assault claim, with the result that it be dismissed, with prejudice.

Musacco was allowed to supplement his original complaint with a pleading that added a claim of assault against COs at BMDC. Musacco alleged that he was assaulted on August 9, 2007 at about 11 p.m. by three BMDC employees -- Sgt. Grant, CO Savarillo and CO Flowers.[14]. According to Musacco, the assault occurred behind cameras; thus, there was no recording of the assault. In his supplemental pleading [Doc. 3], Musacco primarily asked that the alleged assault be thoroughly investigated.

Defendants Grant and Savarillo argue that they are entitled to summary judgment on the basis of qualified immunity. While Defendants admit that there was a physical altercation between the COs and Musacco on August 9, 2007, they argue that the evidence demonstrates that their use of force escalated in response to Musacco's attempts to resist officers and that he posed a threat to officer safety. According to Defendants, Musacco is unable to demonstrate that the show of force was excessive under an "objective reasonableness" standard.[15] Thus, Musacco is unable to meet his burden to overcome the qualified immunity defense.[16]

---

[14]Flowers no longer is employed by BMDC. Musacco claimed that Flowers was fired because of the incident in question, but the evidence shows Flowers voluntarily resigned on October 22, 2007, several months after the incident in question. [Doc. 31, Ex. H.] As stated previously, service was not successfully effected on Flowers.

[15]The Court did not analyze this case under Fourth Amendment law as suggested by Defendants. An allegation of excessive force by an inmate should be analyzed under Eighth Amendment jurisprudence rather than Fourth Amendment standards. See Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865 (1989).

[16]Defendants concede that Musacco appears to have administratively exhausted the grievance procedure regarding the alleged assault. Thus, they do not pursue that affirmative defense. [Doc. 31, p. 13(b).]

Musacco did not respond to the <u>Martinez</u> report submitted by Defendant Grant and Savarillo regarding the alleged assault.  The undisputed facts are taken from Defendants' <u>Martinez</u> report and attachments.

### A.   *Undisputed Material Facts with Respect to Assault Claim*

On August 9, 2007, there was a physical struggle between Musacco and a number of BMDC correctional officers, including Sgt. Grant, and COs Savarillo and Flowers.  On that night, Sgt. Grant was notified by a CO that a strong odor of marijuana was coming out of Cell #26.  As a result, three inmates, including Musacco, were asked if they had any drugs on them, and all initially denied drug possession.  However, Musacco then told the COs that he had a "small roach in the room" and that he would get it for the officers.  The officers did not find any contraband and were instructed to conduct a strip search on all three inmates.  No contraband was found on two of the three inmates.

Several COs and Sgt. Grant observed that Musacco had a bag of contraband in his buttock area.  Musacco refused to turn over the drugs even after being ordered to do so.  Instead, Musacco was able to flush the contraband down the toilet.  During Musacco's attempts to flush the contraband, Sgt. Grant grabbed Musacco by the arm and struck Musacco with an empty open hand to the abdomen area in an attempt to stop his actions.

Officers were not able to retrieve the contraband from the toilet.  Musacco was placed on the floor in a face-down stabilization position but continued to be combative.  He was then placed in mechanical hand restraints.  He was assisted to his feet and placed up against the wall.  Sgt. Grant advised Musacco to stop resisting but Musacco continued to resist.  He raised his left leg and kicked CO Flowers in the groin area.  Musacco was returned to the floor, face down.  CO Savarillo applied a pressure point technique with his right hand to the right side of Musacco's facial area, due to

25

Musacco's continued combative behavior and attempts to bite officers. Musacco yelled that he was being choked, and Sgt. Grant ordered Savarillo to stop his action, which he did. Musacco was assisted to his feet again so that leg restraints could be placed on him. Once again, Musacco kicked and hit CO Savarillo in the groin. Musacco was placed on the floor again, face-down, and the leg restraints were applied. Musacco continued to be combative and verbally abusive of staff.

When taken for medical treatment, Musacco refused medical attention and was verbally abusive to medical staff. He was then escorted to segregation without further incident. However, Musacco continued to make verbally abusive and threatening statements about staff. Photographs were taken of Musacco indicating that no signs of injury although there was redness due to restraints and his resistance.

Two investigations were conducted – an internal investigation and an investigation by an external agency, Robert Caswell Investigations. The internal report indicated that Musacco denied having contraband on him and claimed to have become aggressive only because the officers were "roughing him up" during the strip search.

The internal investigation, conducted in August 2007, confirmed that Sgt. Grant, along with four other COs, observed Musacco with contraband on his person and that Musacco became violent when officers tried to stop him from disposing the contraband in a toilet. Sgt. Grant hurt his left shoulder during the altercation. COs Flowers and Savarillo were not injured. Musacco was written up, seen by medical personnel, cleared and sent to segregation pending a disciplinary hearing.

According to the internal investigation, all staff acted according to policy and procedure except for Savarillo's use of a pressure point procedure, which was in question. Written statements (sometimes more than one) were provided by Sgt. Grant, Lt., Robinson, CO Vann, who observed

Musacco with contraband, CO Savarillo, CO Koeppe, CO Galaviz, CO Cano and CO Flowers, all of whom witnessed certain portions of the incident.  [Doc. 31, Ex. A.]  Musacco also gave a brief statement, dated August 9, 2007, contending that he was brought out of his cell for "drug reasons" for which there was no basis.  He stated that Sgt. Grant struck him in the ribs and that multiple COs hit him.  "After being viciously cuffed, I was cuffed, choked and assaulted."  [Id., Ex. A., Bates 46.] Several other inmates witnessed the incident and provided verbal statements.  [Id., Ex. A, Bates 47, 48.]

On November 1, 2007, Robert Caswell Investigations conducted the external investigation. [Doc. 31, Ex. B.]  The result of the second investigation was "justified use of force."  The outside agency reviewed all statements provided, including Captain Chacon's internal investigative report, in which Chacon questioned the use of force by CO Savarillo.  The agency also reviewed the many photographs taken of Musacco after the incident.

In January 2008, the agency conducted interviews of the personnel involved.  In addition to the COs and Musacco, the agency spoke to a MDC Academy Instructor regarding the use of pressure points techniques.  The Instructor stated that such techniques are taught to correctional officers in the academy and are used to control combative inmates.  The Instructor further stated that a pressure point technique applied underneath the jaw, as was used on Musacco, was an effective way to control a violent inmate.  [Doc. 31, Ex. B, Bates 16.]

The outside agency made a number of findings, including a finding that Musacco had been trying to bite CO Flowers and other officers when Savarillo applied a pressure point technique under Musacco's jaw.  When Savarillo was directed to stop using the technique, he ceased.  The outside investigation revealed that the pressure point technique used by CO Savarillo was minimal and

27

appropriate for officer safety.  Moreover, Musacco did not sustain any injuries as a result of the pressure point technique.  [Doc. 31, Ex. B, Bates 19.]

In addition to the investigative files and conclusions, Defendants provided affidavit statements from Sgt. Grant, CO Savarillo and Captain Chacon.  [Doc. 31, Exs. C, D, E.]  The affidavits are consistent with the previously submitted written statements.  Sgt. Grant noted that the Bernalillo County Sheriff's Office was contacted about the incident and that criminal charges were filed against Musacco as a result of his conduct.  CO Savarillo observed that Musacco is a large man, about six feet tall, who weighs approximately 205 pounds.  Savarillo stated that he applied a pressure point maneuver to Musacco, consisting of placing three to four fingers of his left hand underneath Musacco's jaw on his right side and that the technique was used for a very short time. Captain Chacon, while not present during the incident, reviewed the investigative findings and concurred with the outside agency's conclusion.  Chacon further stated that no adverse employment actions of any sort were taken against any of the COs as a result of the incident.

Although Defendants agree that Musacco exhausted his administrative remedies with respect to the assault, the Court summarizes the four grievances filed by Musacco.  One grievance, dated August 10, 2007, states that Musacco was filing a grievance against Sgt. Grant for punching him in the ribs and back.  The grievance was also against CO Savarillo for trying to choke Musacco, and against CO Flowers for punching and kicking him on the ground.  Musacco contended that Grant told him that "this is how we treat people that kill old ladies."  [Doc. 31, Ex. G, Bates 20.]

The facility's response to this grievance is that the matter was under investigation, but it is not clear whether Musacco was informed of the results of the two investigations.  A computer generated summary of a grievance states that another grievance was filed on September 10, 2007,

in which Musacco asked why his first grievance had not been answered within the 10 days allowed for responses.

On October 5, 2007, Musacco filed a grievance stating he had filed two prior grievances regarding the assault and that he had not received a response to either of the grievances.  This grievance was provided in attachments submitted by Musacco.  [Doc. 21.]  It does not appear that Defendants had this grievance for some reason, although the form shows a faint signature by someone in the facility.

On October 17, 2007, Musacco filed a fourth grievance, indicating he had filed numerous prior grievances about the assault but had not received a response.  He stated in this grievance that he was informed on September 28, 2007 and October 8, 2007 that the incident was under investigation.  But, Musacco claimed he had not heard anything about the situation or investigations.  The second investigation was not completed until early 2008.

### B.    *Analysis*

Musacco's assault claim against the three CO defendants  is construed as an excessive force claim brought under the Eighth Amendment.  "A claim arises under § 1983 if prison officials use force more excessive than necessary to preserve safety and discipline in the correctional facility." Boyett v. County of Washington, 2008 WL 2483286 at *10 (10th Cir. June 19, 2008).  *See also* Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards.")

> The use of excessive force by a correctional officer violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Under this approach,

> the extent of the injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it. (internal citation omitted).

<u>Gruenwald v. Maddox, et al.</u>, 2008 WL 1766890 at *4 (10th Cir. Apr. 17, 2008).

Defendants Grant and Savarillo argue that they are entitled to qualified immunity on the assault claim. Thus, the Court determines whether Musacco showed a constitutional violation under the alleged facts taken in the light most favorable to Musacco. If so, the Court determines whether the right was clearly established at the time of the alleged injury. <u>Saucier</u>, 533 U.S. at 201.

Based on the undisputed material facts, the Court concludes that Musacco did not demonstrate that Defendants' conduct violated a constitutional right. On the night in question a physical struggle erupted between COs and Musacco after the COs attempted to stop Musacco from flushing away contraband observed on his body. Sgt. Grant grabbed Musacco by the arm and struck

him with an empty open hand to his abdomen area while trying to stop Musacco.  At that point, Musacco was placed on the floor with his face down.

It is uncontested that Musacco, a large man, was continually combative during this encounter.  He kicked several COs in the groin area and attempted to bite a CO.  Two separate investigations confirmed that the use of force was justified under the circumstances.  The pressure point technique applied by Savarillo was thoroughly reviewed by the outside investigator and also found to be justified.

The evidence shows that the force utilized by the COs was "applied in a good-faith effort to maintain or restore discipline" rather than "maliciously and sadistically to cause harm."  *See* Gruenwald, 2008 WL 1766890 at *4 (*citing* Whitley, 475 U.S. at 319).  Moreover, Musacco was clearly disruptive during the incident in question, and prison officers are given some latitude in handling disruptive prisoners.  *See* Whitley, 475 U.S. at 320.  "[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used."  Id.  In addition even if a correction officer's belief is mistaken that a prisoner was likely to fight back, the officer would be justified in using more force than in fact was needed.  *See* Saucier, 533 U.S. at 204-05, 121 S.Ct. at 2158 (discussing Fourth Amendment).

The facts do not demonstrate that the force applied by officers, under the circumstances of this case, was wanton or unnecessary.  No facts exist to show that prison officers acted maliciously or sadistically.  There clearly was a need for the application of force as the officers attempted to restrain Musacco and bring him to his feet only to have Musacco repeatedly strike the officers.  The

31

officers used a reasonable amount of force based on the threat they reasonably perceived.  They used a number of techniques in the attempt to prevent Musacco from flushing away the contraband and from continually resisting them, including placing him face-down on the floor, placing him against a wall, and applying hand and leg restraints and the pressure point technique.  None of the actions taken by the COs resulted in physical injury to Musacco who declined any medical assistance even though he was taken to prison medical personnel.

Based on the undisputed facts, the Court determines there is no evidence of a constitutional violation.[17]  In addition, even if there were evidence of a constitutional violation, Musacco cannot defeat the second prong of the qualified immunity defense.  Under Tenth Circuit law, it was and is clearly established that prison officials may apply force in a good-faith effort to maintain or restore discipline, particularly under circumstances when an inmate repeatedly strikes correctional officers and is continually combative with officers.  Based on the investigations and affidavits, the Court concludes that a reasonable officer could have believed that Musacco was a theat to his own safety and officers' safety.  Therefore, the Court recommends that qualified immunity be granted to the Defendant COs as to the assault claim and that this case be dismissed, with prejudice, with respect to all three Defendant COs.

## Recommended Disposition

The Court recommends that summary judgment be denied to Defendant Torres with respect to the Eighth Amendment dental treatment claim, based on the existence of genuine issues of material fact.  The Court further recommends that the dental treatment claim proceed through discovery and to a bench trial.  In addition, the Court recommends that the Eighth Amendment

---

[17]As noted above, Musacco did not respond in any substantive way to the <u>Martinez</u> report submitted by Defendants Grant and Savarillo

assault claim be dismissed against the three individual Correctional Officer Defendants on grounds

of qualified immunity, and that the case be dismissed, with prejudice, as to the COs.


*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge