**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BEAU JAMES MUSACCO,

        Plaintiff,

  vs.                                                        No. CIV 07-721 MV/LFG

RON TORRES, Director BMDC,
C.O. LARRY GRANT, C.O. KENNETH
FLOWERS, and C.O. SAVARILLO,

        Defendants.

**ORDER ADOPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION
AND DISMISSING THE CASE**

THIS MATTER comes before the Court on the Magistrate Judge's Analysis and Recommended Disposition [Doc. 42], filed June 25, 2008, and on Defendant Ron Torres ("Torres")'s Objections [Doc. 43] to the analysis and recommended disposition. Plaintiff Beau James Musacco ("Musacco") did not file Objections, although he did file a document titled Plaintiff's Response to Summary Judgment Regarding Dental Claim [Doc. 44], in which he asks for appointment of counsel.

The Court conducted a *de novo* review of those portions of the Magistrate Judge's analysis and recommended disposition to which Torres objects and now determines that the Magistrate Judge's Analysis and Recommended Disposition will be adopted in part and rejected in part, as discussed below.

1

### The Assault Claim

The Magistrate Judge recommended that the individual corrections officer defendants be granted summary judgment on Musacco's claim against them based on allegations of assault, and that the complaint be dismissed with prejudice as to those defendants. (Defendant Torres was not named in connection with the assault claim). No objections having been filed with respect to this recommendation, and the Court finding it well-reasoned and sound, this recommended disposition will be accepted and the assault claim will be dismissed with prejudice.

### The Dental Claim

With respect to the dental claim, the Magistrate Judge found that Musacco's dental condition constituted a serious medical condition for purposes of the Eighth Amendment and that there were genuine issues of material fact with respect to whether Torres acted with deliberate indifference to Musacco's serious dental condition. The Magistrate Judge further found that Torres was not entitled to qualified immunity and that Musacco had produced sufficient evidence to raise a genuine issue of fact as to whether Torres personally participated in or acquiesced in the dental care provided to Musacco.

In addition, the Magistrate Judge found genuine issues of fact as to whether Musacco exhausted his administrative remedies.

In his Objections, Torres challenges the following findings: (1) that Musacco's dental condition was sufficiently serious to give rise to an Eighth Amendment claim; (2) that genuine issues exist as to whether the dental care Musacco received was constitutionally adequate; (3) that Musacco established sufficient personal involvement on the part of Torres with respect to the dental treatment;

and (4) that genuine issues exist as to whether Musacco had fully exhausted the prison grievance procedure.

Upon consideration of Torres's Objections, which include additional information not supplied with the Martinez Report, the Court determines that it must reject the Magistrate Judge's recommended finding regarding exhaustion of administrative remedies. The material submitted with the Objections demonstrates that Musacco failed to exhaust his claim of inadequate dental care before he filed suit in this matter.

Torres included with his Objections several affidavits and some documentary evidence not presented with the Martinez Report. While issues or theories raised for the first time in objections to a Magistrate Judge's report are deemed waived, United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001), Torres's submissions are not new theories, but rather constitute new evidence in support of theories already presented to the Court.

The Court will consider this evidence. However, Torres is reminded that the purpose of a Martinez Report is to develop the factual and legal basis for determining whether an inmate has a meritorious claim. In the Order for Martinez Report [Doc. 23], the Court notified the parties that the Martinez Report could be used in deciding whether to grant summary judgment, and therefore "the parties should submit whatever materials they consider relevant to the claims."

On *de novo* review after a party files objections to a Magistrate Judge's findings and recommended disposition, the District Court must consider all of the evidence in the record, and not merely review the Magistrate Judge's report and recommendation. Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996). While the Court would have preferred that Defendant present all evidence in support of his defenses at the time he submitted the Martinez Report, the Court will, in

its discretion and in the interest rendering a decision on the basis of a complete record, consider this supplemental evidence.

The Prison Litigation Reform Act ("PLRA"), at 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

In Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007), the Supreme Court overruled earlier cases requiring plaintiffs in PLRA suits to plead and demonstrate exhaustion in the complaint. The Court nevertheless confirmed the proposition that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," *citing* Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002). The Court in Porter reiterated earlier rulings requiring that all "available" remedies be exhausted, even those remedies which do not meet federal standards and which are not necessarily "plain, speedy, and effective," as required under prior legislation. Porter v. Nussle, *supra*, 534 U.S. at 524.

In the present case, Musacco filed three grievances regarding the dental care he received at Bernalillo County Metropolitan Detention Center ("BCMDC"). In the Analysis and Recommended Disposition, the Magistrate Judge found that there were genuine issues of material fact as to whether Musacco exhausted his prison remedies. The Magistrate Judge noted that in the Martinez Report, Torres argued only summarily that Musacco failed to follow the available grievance procedure to its conclusion and, pointing out that a defendant has the burden of asserting and proving failure to exhaust, the Magistrate Judge found that the documentation submitted with Torres's Martinez

Report was insufficient to meet this burden, and that genuine issues of material fact remained as to the issue of exhaustion.

The Magistrate Judge noted that Torres did not provide copies of any of the three original grievance forms, but rather supplied only copies of computerized entries summarizing some of Musacco's grievances. Even these were only partially complete. The material supplied by Torres with the Martinez Report did not indicate that Musacco ever declined to pursue a denial of his grievances or to pursue an appeal, nor did the material show whether the grievances received timely responses.

The Magistrate Judge also pointed to Musacco's assertion that responses to two of the three grievances were not timely and that one grievance was returned to him without any response at all, and noted that Torres offered no affidavit testimony to the contrary. Furthermore, Torres did not produce the facility's regulations concerning the grievance procedure, notwithstanding the Court's direction to do so in its Order requiring the Martinez Report.

Torres cured these defects with the material submitted in connection with his Objections. Torres attached to his Objections the Affidavit of Phillip Quintana ("Quintana") [Doc. 43, Ex. D], the person responsible for oversight of the grievance process at BCMDC. Quintana stated under oath that in January 2007, as part of the initial classification process at BCMDC, Musacco received an orientation as to various procedures at the facility, including instruction on how to file a grievance and how to appeal a decision related to a grievance. Quintana stated further that Musacco signed a Classification Inmate Counseling Form acknowledging receipt of this orientation. This form was attached as an exhibit to Quintana's Affidavit.

Torres further supplied the Affidavit of Olivia Webster ("Webster"), Classification Specialist at BCMDC, who is assigned to process and track all grievances filed by BCMDC inmates. [Doc. 43, Ex. E]. Attached to her Affidavit was a copy of the BCMDC grievance procedure, including the process for appealing a grievance decision. [Doc. 43, Ex. E, Attachment E-1]. Webster stated under oath that she reviewed all grievances submitted by Musacco concerning his dental care at BCMDC. There were three of these; copies were attached to the Affidavit as Att. E-2. These copies provide a more complete picture of the grievance procedure as initiated and processed by Musacco and BCMDC with respect to Musacco's dental care at the facility.

The first grievance, No. 23439, was submitted July 11, 2007. In this grievance, Musacco complained that he had been on sick call numerous times, complaining of bad tooth aches, and that he had been to the dentist asking that the teeth be pulled but was told only that a referral for outside treatment would have to be referred to the Director. He stated also that he had already sent a letter to Director Torres on this matter. A response to this grievance was written on September 21, 2007.[1] Webster states that Musacco did not file an appeal of this grievance.

The second grievance, No. 5905, was submitted August 8, 2007, several days after this lawsuit was filed. In that grievance, Musacco wrote: "(Dental) I have filled out a grievance. I have filed a torts claim. I still can't get any of my teeth pulled. They are both in pain." A response to the

---

[1] This response appears to contain a typographical error in that it refers to Grievance No. 23440, rather than 23439. The responder states that s/he is responding to a grievance submitted by Musacco on July 11, 2007, in which he complained of tooth pain and lack of treatment and stated that he had already submitted a letter to Director Torres. This description corresponds to Grievance No. 23439. With no explanation of this numerical discrepancy and no indication from either party that this was anything other than a typographical error, the Court assumes that this response was meant to apply to Grievance No. 23439, as Torres states in his Objections [Doc. 43, at 9].

grievance was dated September 10, 2007. Webster states that Musacco did not file an appeal of this grievance.

A subsequent grievance, No. 30116, was submitted October 5, 2007. As was the case with the second grievance, this third grievance was submitted to BCMDC officials after the date Musacco filed suit. In the third grievance, Musacco stated that he had been waiting since February to have his teeth pulled but only one tooth had been pulled as of the date of the grievance. Musacco noted also that he filed two previous grievances on the same matter. A response to this grievance was written on October 18, 2007. Webster again states that Musacco did not file an appeal of this grievance.

Musacco asserts that the first two grievances were not addressed by detention center officials in a timely manner, and the record bears this out. BCMDC Policy and Procedures (at sections C.3 and C.4) provides that grievances are to be given to the Grievance Manager no more than two working days after the inmate submits the grievance. Within two working days of submission, the Grievance Manager must copy and log the grievance, then assign it to the appropriate division manager. The division manager must return a response within ten working days.

It took approximately two months and ten days before Musacco received a response to his first grievance, and more than one month before he received a response to the second grievance. Thus, both of these responses were untimely under the facility's own procedures manual. (Musacco does not contend that the third response was untimely).

While not disputing that the first two grievances received late responses, Torres contends that none of Musacco's grievances are effective to exhaust his remedies, because the grievances themselves were untimely filed. The Grievance Policy (at section C.2) requires an inmate to submit

a grievance within five working days of the incident or situation on which the grievance is based. It is somewhat difficult to determine exactly what the "incident" or "situation" is in Musacco's case, as he claims a continuing failure to provide him with needed dental care, even though detention center officials were aware of his need.

Torres points out that the July 11, 2007 grievance, in which Musacco complains that the dentist did not pull his painful teeth, was filed more than five working days after Musacco's then-most recent visit to the staff dentist, which occurred on May 28, 2007. The August 8, 2007 grievance, in which Musacco complains that he "still can't get any of my teeth pulled," was filed more than five working days after his then-most recent visit to the dentist, which occurred on July 27, 2007. And the October 5, 2007 grievance, in which he complains that only one of his two painful teeth had been extracted, was filed more than five working days after the extraction mentioned, which occurred on August 14, 2007.

As noted above, it is impossible to pinpoint exactly when Musacco should have filed a grievance or grievances regarding the allegedly inadequate dental care, which he asserts was an ongoing problem which lasted for many months. He was clearly engaged in an ongoing process of repeated grievances, submitted in an attempt to rectify an alleged continuing lack of dental care for his painful and impacted wisdom teeth from February 2007 until the wisdom teeth were finally pulled, one in August 2007, the other in January 2008.

If BCMDC considered Musacco's grievances untimely, detention center officials did not reject them on that basis; indeed, responses were ultimately filed to all three of the grievances. In these circumstances, and because the five-day deadline was not necessarily triggered by Musacco's

most recent dental appointment, the Court rejects Defendant's assertion that Musacco's grievance was untimely.

At the time Musacco filed his complaint in this case, the only grievance that had been submitted was the first one, dated July 11, 2007. The other two grievances, submitted by Musacco after the lawsuit was commenced, do not count toward fulfillment of the exhaustion requirement. Peoples v. Gilman, 109 Fed. Appx. 381, 383 (10th Cir. 2004) ("Mr. Peoples also asserted that a grievance he arguably filed after instigating his civil suit satisfies the exhaustion requirement. The district court properly rejected this argument. The filing of a grievance after the initiation of the lawsuit defeats the purpose of the statute: '[n]o action shall be brought ... until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a)").

The July 11, 2007 grievance is therefore the only one relevant to the exhaustion discussion. Musacco's failure to exhaust results from the fact that the July 11 grievance was still pending at the time he filed suit.

As noted above, the applicable grievance procedures state that a grievance must be forwarded to the "appropriate division head" within two working days of receipt of the grievance. July 11, 2007, the day Musacco submitted his grievance, was a Wednesday; thus, the grievance should have been forwarded to a division head by Friday, July 13, 2007. It appears from notations on the grievance form that Musacco's grievance was received by a case manager or supervisor on July 11 and was forwarded to "MED" on July 16, 2007.[2]

---

[2] It appears, therefore, that the grievance was not forwarded within two working days. Although this timing appears to violate BCMDC's procedures, such violation does not affect the outcome here. With respect to Musacco's obligation to wait for completion of the administrative process, the timing of the "forwarding" action would affect the exhaustion issue only if the grievance had been forwarded *earlier* than July 13, rather than later.

Under the procedures, the division head is to respond to the grievance and return the grievance form to the Grievance Manager within ten working days from the date the division head receives the grievance. Thus, if the division head received Musacco's grievance on July 13, which is the deadline according to the Grievance Procedures, he or she would have until Friday July 27 to return the grievance. If the division head received it on July 16, which appears to be the case given the notations on the face of the grievance, he or she would have until July 30 to respond. In either event, Musacco's complaint was filed prematurely.

Court records indicate Musacco's complaint was filed at 2:02 p.m. on July 27, 2007. Assuming the division head had until the end of the working day on July 27 to return the grievance, it is clear that at the time Musacco filed his complaint, he did not know whether prison authorities were going to submit a timely response to his grievance; the administrative process was still running its course. The same is true if we assume that the division head had until Monday July 30 to respond to the grievance.

As noted above, the PLRA states that a prisoner may not file suit "*until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The grievance process must be given a chance to work, and a complaint filed before completion of that process is premature and, barring extraordinary circumstances, must be dismissed. Musacco has point to no such circumstances in this case.

We now know that Musacco's July 11 grievance was not answered within the time provided; indeed, Musacco did not receive any response at all from prison authorities until September 21, 2007, more than two months after the first grievance was filed. A late response to a grievance generally renders the administrative remedy "unavailable" and therefore excuses the inmate's failure

10

to appeal that grievance. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). However, Musacco did not give detention center officials the chance to respond on time to his grievance before resorting to Court. At the time he filed his lawsuit, Musacco did not know that the response to his grievance would be untimely, and therefore he did not technically exhaust his remedies before filing suit.

As noted above, the three-day time for appealing a response to a grievance is not triggered until the inmate receives a response from the Grievance Manager [Doc. 43, Ex. E-1, at Sections D.3, E.3], and Musacco did not receive a response for over two months. While the Grievance Policy is somewhat unclear on this point, it appears that the grievance should have been designated as "unresolved," in which case the Grievance Manager is tasked with investigating what action was taken by the division manager, "and appeal is given upon request." [Doc. 43, Ex. E-1, at Sections C(4)(a)(5)(b); C(4)(a)(7); D(2)]. Thus, although the phrasing is somewhat unclear, the Grievance Procedures provide a mechanism for appeal, even in the event a division manager fails to respond to the grievance within the time frame set forth. Musacco never availed himself of this procedure; instead of requesting an appeal notwithstanding the lack of response to his grievance, he simply filed suit before the time to respond even expired.

Thus, there were numerous violations of the grievance procedure in this case, both on the part of Musacco and on the part of detention center officials. However, the Court finds dispositive Musacco's premature filing of his complaint in this Court. He did not allow the BCMDC's grievance procedure to run its course in the first instance, and the Court has no option but to dismiss the dental claim for failure to exhaust remedies.

> The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to

11

> "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." [*Citing* Porter v. Nussle, *supra*, 534 U.S. at 516; *and* Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819 (2001)] . . . . The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." Nussle, *supra*, at 524 . . . . The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.

Woodford v. Ngo, 548 U.S. 81, 93-94, 95, 126 S. Ct. 2378 (2006).

> The exhaustion requirement of the PLRA requires that a prisoner's claim be administratively exhausted prior to the filing of the action in court, rather than during the pendency of that action . . . . "[r]esort to a prison grievance process must precede resort to a court" (quoting Porter [v. Nussle], 534 U.S. at 529, 122 S. Ct. 983) . . . . § 1997e(a) requires exhaustion before the filing of a complaint and . . . a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation . . . .

Price v. Shinn, 178 Fed. Appx. 803, 804-05 (10th Cir. 2006). Furthermore, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford v. Ngo, *supra*, 548 U.S. at 85.

On July 31, 2008, Musacco filed a Response [Doc. 45] to Torres's Objections. He says that he and other inmates have no access to policy handbooks and he should not be expected, therefore, to adhere to policies of which he is unaware. However, as noted above, Torres submitted evidence that Musacco was given orientation on the grievance procedure, and Musacco signed a form acknowledging this training. Musacco further contends that an employee named "Roseanne" makes it difficult for inmates to file grievances; he says that she tells inmates to "hurry up" when filling out grievance forms and "grievance forms are routinely denied by Roseanne." [Doc. 45, at 7, 8]. However, Musacco was able to obtain at least three grievance forms, which he submitted to detention center officials. The first grievance, the only one submitted prior to the filing of this

lawsuit, was still pending at the time Musacco filed his complaint. Thus, any alleged interference with his ability to file and complete the grievance procedure is irrelevant, given the fact that Musacco did not allow the procedure to proceed to its conclusion before he filed suit. There is nothing in Musacco's Response [Doc. 45] which alters the conclusion that he failed to exhaust his remedies.

The Court recognizes that there is little if anything that BCMDC can do at this point with respect to Musacco's dental care complaint. Both of his pain-causing teeth have by now been extracted. An investigation has been done, the dentist responsible for Musacco's care at BCMDC submitted his affidavit, and all medical records encompassing the relevant dates have been produced. Musacco continues to asserts a right to money damages, and the Magistrate Judge found that genuine issues of fact remain as to whether Defendant's actions constituted deliberate indifference. However, even though a damages remedy is not available through the prison grievance procedures, Musacco is required to follow those procedures, Porter v. Nussle, *supra*, 534 U.S. at 524. If he does not, the Court is required to dismiss his lawsuit. *See*, Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003):

> We also recognize the holdings of many of our sister circuits that permitting exhaustion *pendente lite* undermines the objectives of section 1997e(a) and that the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur. [Citing numerous cases].

This result may appear unfair at first glance. However, it fulfills the purpose of making crystal clear to Musacco, and to other inmates wishing to pursue prison-conditions lawsuits, that

they are responsible for initiating the grievance process and must allow it to run its full course before filing suit in federal Court.

> The grievance system is an important part of the administrative process that cannot be overlooked by prisoners. The grievance process entails a documented conversation between the prisoner and prison officials, requiring each to explain their point of view, and fulfills the purpose of the exhaustion requirement – to give prison officials a chance to handle a prisoner's complaints internally and to create an administrative record to help courts resolve the complaints that end in a lawsuit.

Carr v. Brill, 187 Fed. Appx. 902, 905 (10th Cir. 2006).

The claim of inadequate dental care will be dismissed without prejudice, for failure to exhaust administrative remedies. This result makes it unnecessary to consider Torres's other grounds for objection to the Magistrate Judge's Analysis and Recommended Disposition.

## **Order**

IT IS HEREBY ORDERED that the Court adopts in part the Analysis and Recommended Disposition [Doc. 42] of the United States Magistrate Judge, to the extent it recommends dismissal of Musacco's claims for alleged assault against the individual corrections officers; and the Court rejects in part the Analysis and Recommended Disposition, to the extent it recommends that Musacco's claims for inadequate dental care proceed to trial.

IT IS FURTHER ORDERED that summary judgment is granted to the individual corrections officer defendants with respect to Musacco's claim for constitutional violations arising from an alleged assault by these officers. The assault claim, set forth in Doc. 3 herein (docketed as an Appendix/Supplement to Plaintiff's Complaint), is hereby dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiff's claim against Defendant Torres for alleged inadequate dental care is dismissed without prejudice for failure to exhaust prison remedies.

IT IS FURTHER ORDERED that, to the extent the document titled Plaintiff's Response to Summary Judgment Regarding Dental Claim [Doc. 44] constitutes a motion by Plaintiff for appointment of counsel, that motion is denied.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE